# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-0784V
UNPUBLISHED

| | |
|---|---|
| LINDA BERGSTROM,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: December 4, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Edward M. Kraus*, Law Offices of Chicago Kent, Chicago, IL, for petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for respondent.

### **FINDINGS OF FACT**[1]

On May 28, 2019, Linda Bergstrom filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") which meets the Table Injury requirements, after receiving the influenza ("flu") vaccine on January 29, 2018. Petition at 1, ¶¶ 1, 20. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's SIRVA occurred within 48 hours of vaccination. Specifically, Petitioner suffered left shoulder pain within 24 hours of vaccination.

### I.   Relevant Procedural History

Approximately two weeks after filing her petition, Petitioner filed a number of medical records. Exhibits 1-6, filed June 10, 2019, ECF No. 7. An initial status conference was scheduled for August 20, 2019.

During the call, Petitioner's counsel was asked to produce the medical records from a May 16, 2018 visit with a nurse practitioner, when Petitioner first sought treatment of her left shoulder pain. Scheduling Order, issued Aug. 21, 2019, at 1, ECF No. 11 (citing Exhibit 6 (Petitioner's affidavit) at ¶ 12). Petitioner was ordered to file those medical records, and Respondent's counsel was ordered to file a status report providing information regarding his assessment of the claim. *Id.* at 2.

The next day, Petitioner filed the medical records from her May 16, 2018 visit. Exhibit 7, filed Aug. 22, 2019, ECF No. 12. After multiple requests for additional time, Respondent filed a status report indicating he had reviewed the case and wished to file a Rule 4(c) Report opposing compensation. Status Report, filed July 17, 2020, ECF No. 19.

In his Rule 4(c) Report, filed on September 15, 2020, Respondent argues that Petitioner's injury does not meet the definition for a Table SIRVA injury because she has failed to establish that the onset of her pain occurred within 48 hours of vaccination. Rule 4(c) Report at 5, ECF No. 20. To support his assertion, he emphasizes the 100-day gap between vaccination and when Petitioner first sought medical care (May 16, 2018). *Id.* He claims "there is no contemporaneous medical evidence that [P]etitioner's pain occurred within 48 hours of vaccine administration." *Id.*

### II.   Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours, as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

2

### III.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Finding of Fact

My findings are based upon a complete review of the record, including all medical records, affidavits, and Respondent's Rule 4(c) Report. Specifically, I take note of the following evidence:

- Petitioner received the flu vaccine on January 29, 2018. Exhibit 4 at 1. There is nothing in the medical records to indicate she received medical treatment for her left shoulder pain or any other medical issue during the 100-day period between vaccination and when she first sought treatment for her left shoulder pain on May 16, 2018.

- In her affidavit, Petitioner indicated that she attempted to schedule an appointment with her primary care provider ("PCP") regarding her left shoulder pain in early March 2018, but was told she would have to wait several months to see her PCP. Exhibit 6 at ¶ 9. Although given the option to see a nurse practitioner sooner, Petitioner initially opted to wait. *Id.* After a few more weeks of discomfort, Petitioner changed her mind and accepted a May 16, 2018 appointment with the nurse practitioner. *Id.* at ¶ 11.

- In her affidavit, Petitioner also indicates she is "not a person who seeks medical care often and will generally postpone trips to the doctor if at all possible." Exhibit 6 at ¶ 6. Petitioner's PCP medical records show Petitioner

4

- generally visits her PCP once a year for her annual wellness appointment. Exhibit 2.

- When seen by the nurse practitioner on May 16, 2018, Petitioner reported that she "had left upper arm and shoulder pain since receiving the flu shot in February." Exhibit 7 at 7.

- On June 7, 2018, Petitioner was seen by an orthopedist. Exhibit 2 at 9-10. At that visit, she "describe[d] diffuse pain around the shoulder and arm that began a day after she obtained a flu shot at Walgreen's on 1/29/2018." *Id.* at 9.

- During her initial evaluation for physical therapy on June 13, 2018, Petitioner indicated "that on 1/29/18 she got a flu shot and has had a lot of pain in the L arm ever since then." Exhibit 3 at 2. She described her pain as "always an ache." *Id.*

- Petitioner's first appointment with her PCP following vaccination occurred on August 21, 2018. Exhibit 1 at 15-24. At this annual wellness visit, Petitioner described her left shoulder pain as "better." *Id.* at 20.

Respondent emphasizes that Petitioner did not seek medical care for her left shoulder pain until more than three months after vaccination. Rule 4(c) Report at 5. However, it is often common for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own. Additionally, Petitioner was not seen during this 100-day period for any other illness or medical condition. Such intervening treatment evidence can in many cases either corroborate a petitioner's claim or undermine it – but it is totally absent here. Petitioner has also provided a detailed and credible explanation of the reason for her delay.

The evidence of treatment after the May 2018 visit otherwise is consistent with Petitioner's factual allegations. When Petitioner did seek care in May and June 2018, she consistently related her left shoulder pain to the flu vaccine she received on January 29, 2018. Although she once indicated she received the vaccination in February, rather than the end of January, given the late January date, this error is not significant. Throughout these contemporaneously created medical records, Petitioner described the onset of her pain as occurring immediately upon vaccination or, on one occasion, by the next day.

Claiming that there is no contemporaneous medical evidence establishing the onset of Petitioner's pain occurred within 48 hours of vaccination, Respondent appears

5

to ignore these contemporaneously-provided histories. However, the Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied <u>to</u> or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by the petitioner. While these records may not be from the *immediate* time of vaccination, they are not so far off as to cast doubt on their accuracy either.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination. Specifically, I find the onset of Petitioner's pain occurred within 24 hours of vaccination.

### V.     Scheduling Order

In light of this fact ruling, Respondent should review the record in this case again and should indicate whether he is willing to engage in settlement discussions, desires to file an amended Rule 4(c) Report conceding entitlement, or wishes to continue to defend this case. If the later, he should indicate the bases for his continued objection to compensation.

**Respondent shall file a status report providing his tentative position given my fact ruling by no later than <u>Thursday, January 07, 2021</u>.**

Petitioner should finalize a demand and should forward her demand and supporting documentation to Respondent as soon as possible. She also should file any updated medical records or other evidence needed to establish her current condition.

**Petitioner shall file a status report updating me on the status of her demand and supporting documentation by no later than <u>Thursday, January 07, 2021</u>.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master